STATE of Missouri, Respondent,

v.

Phillip (Philip) DEFFENBAUGH,
Appellant.

No. KCD 27128.

Missouri Court of Appeals,
Kansas City District.

March 1, 1976.

Lewis E. Pierce, William E. Shull, Duncan & Russell, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and WELBORN and HIGGINS, Special Judges.

ROBERT R. WELBORN, Special Judge.

A jury in the Jackson County Circuit Court found Phillip Deffenbaugh guilty of bombing. § 564.560, RSMo 1969. The jury did not agree on the punishment and the court sentenced the defendant to ten years' imprisonment.

On this appeal, appellant's first contention is that the trial court erred in overruling his motion to suppress evidence obtained as a result of his arrest, this allegation of error being based on the lack of probable cause for his arrest.

Sometime prior to October 15, 1970, the Kansas City Police Department had established a community relations center at 1815 East 12th Street. The location was known as the "Police Store Front" and also served as headquarters for police foot patrols in nearby housing projects. On the evening of October 15, Officers Robinson and Fleming were in the Store Front, writing reports of their foot patrol duty. At around 9:40 P.M. they noticed an odor similar to that of burning firecrackers and in about 15 or 20 seconds a violent explosion occurred at a rear doorway of the building, located on an

alley. The officers were injured by the blast.

Numerous police officers arrived on the scene shortly. A short time after the explosion, the Kansas City Police Dispatcher, on the basis of an anonymous call, broadcast a "pick-up" for three Negro males with "bushy naturals" in a black over blue Chevelle which had been seen leaving the vicinity of the bombing and which had last been seen westbound on 11th Street from Euclid. Some three or four minutes later a second report was broadcast, "describing that they was carrying a black box or something along with them."

This was the substance of the broadcast reports as testified to by Officer Baker who heard them at the scene of the bombing. Shortly after the second broadcast, Officer Baker saw a black over blue Chevelle stop at a stoplight at the corner of 12th and Woodland, turn east on 12th Street and park. Three Negro males got out of the car. Baker knew two of them, appellant Deffenbaugh and Philip Crayton. The three men stood at the car for a while, talking to people, and then they crossed the street to the front of the Store Front. They looked in the front briefly and then, along with others, were moved back by police.

Officer Baker informed Captain Campbell that Crayton and Deffenbaugh and another man had gotten out of a black over blue Chevelle which fit the pickup order description and Captain Campbell told Baker to arrest them. In the meantime the Chevelle had been moved to a parking lot at 12th and Michigan and Officer Baker and another officer approached the three men at 12th and Michigan and, according to Baker, "asked them how it happened they arrived there." Philip Crayton stated they had walked. "I asked them again and Deffenbaugh, I believe, stated that they had walked, but Jenkins (the third man) never said anything and I asked once more and Jenkins said they had arrived in a Chevelle and he gave the nomenclature, how many horses it had and how souped up it was, et cetera. * * * I told them I had seen them drive up in a black over blue car and asked them where the car was. At this time we told them they was under arrest * * *."

The three men were taken to police headquarters and booked on charges of aggravated assault of a police officer. Their clothes were removed from them, their hands swabbed and material removed from their fingernails. The automobile was searched on the parking lot. A black box on the front seat was carefully removed and opened and found to contain tape cartridges. Some political pamphlets were found in the rear seat of the auto. The vehicle was later taken to headquarters where it was searched fully and the interior of the Chevelle and its trunk were vacuumed.

The three men were released from custody the next morning with no charges filed against them. Subsequently they were indicted for bombing. Their joint motion to suppress the evidence obtained in connection with their arrest was overruled after a hearing. A severance was granted and on Deffenbaugh's trial evidence was presented that analysis of the defendant's clothing revealed traces of ammonium based dynamite, the type used in the explosion, had been found in the right pocket of the jacket. There was also testimony that examination of the particles recovered from the automobile revealed similar traces.

At the hearing on the motion to suppress, Officer Baker testified that he had known appellant for some time and that both Deffenbaugh and Crayton had previously on several occasions asked him to back "them up in their movement * * * take off our uniforms and bring our guns over and work with them." Although he did not so testify on the motion to suppress, Baker testified at the trial that he had also heard appellant make remarks indicating hostility to police officers.

The question presented by the motion to suppress and brought forward on this ap-

peal is whether or not the police had probable cause for the arrests.

The legality of appellant's arrest must depend upon its having been based upon probable cause, which may be found where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient to warrant a reasonable man to believe that an offense has been committed by the person arrested. *Ker v. California*, 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Beck v. Ohio*, 379 U.S. 89, 96–97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

" * * * Of course, all the information in the possession of the officers and all reasonable inferences therefrom are pertinent to determine probable cause. Whether there is justification for probable cause to arrest without warrant must be determined by practical considerations of everyday life on which reasonable men act and is not to be determined by hindsight by legal technicians. *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The determination of probable cause depends upon the particular facts and circumstances of the individual case and no ready 'litmus paper test' can be applied. Probable cause may be based on hearsay. There is a broad gulf between what is required to prove guilt and the requirement of probable cause. * * *" *State v. Wiley*, 522 S.W.2d 281, 287[4–9] (Mo. banc 1975).

Although the officers who testified on the motion to suppress did not agree precisely as to the description of the three men in the police broadcast, the evidence did show a sufficient similarity between the description given, coupled with the description of the automobile, to direct the attention of Officer Baker to appellant and his companions. Certainly, Officer Baker was not required to ignore their presence and was called upon to act. However, it is evident that from the outset the police had decided to arrest the three, on the basis of the "pick-up" broadcast. The officer did briefly interrogate the men about their means of arriving at the scene and, although Officer Baker stated that the "evasion" by appellant and Crayton had heightened his "suspicion," the officer did obtain from the third man a reply which coincided with his observation and he made no effort to pursue the matter further. The only other factor which entered into Baker's action was his acquaintance with appellant's radical views and hostility toward police in general. Baker acknowledged that he had known of no violent action on the part of appellant in support of his expressed views.

Do these factors, considered as a whole, provide the basis for a judgment on the part of a reasonable man that the bombing was the work of appellant and his companions? None of the information which the police had directly connected the three men in the broadcast with the bombing. The first report was that they were seen leaving the "vicinity" or "area" of the bombing. The second report, presumably referring to the same three men, was that one of them was "carrying a black box or something along with them." The Store Front was on a well-traveled public street in Kansas City so that the presence of persons in the "vicinity" would not have been unusual. The proximity to the bombing site of the three reported to have been seen was not shown. Whether they had been seen with a "black box" or "package" before or after the explosion does not appear, although presumably it would have been after the blast.

The information contained in these communications to the police could, at best, have given rise to nothing more than a suspicion that the three persons described were involved in the bombing. This information, coupled with the similarity between appellant and his companions and the persons described would have undoubtedly authorized a temporary detention of the men for "field interrogation" (*Beck v. Ohio*, supra) when they appeared at the scene, but it did not rise to the level of providing probable cause for their arrest.

■ Officer Baker did not feel free to arrest the three without consulting his su-

perior. His superior had no more information than Baker had. Baker's true feeling was probably expressed by his testimony that their "evasion" of how they got there "kind of made me suspicious of them and I wanted to take them down and talk to them." Of course, suspicion cannot provide the legal probable cause required for an arrest without a warrant, although, if the objective facts would support a conclusion of probable cause, Officer Baker's personal belief would not be controlling. However, his view of the situation is not to be ignored.

■ Although an officer in Baker's position would not be expected to erase from his mind his knowledge of appellant's political views and hostility toward police in general, these factors are difficult to give weight to in an objective determination of probable cause. Absent some demonstrated tendency to use violence in support of such ideas, an arrest which must be supported by the political views of the arrestee stands on a weak footing.

■ Viewing the circumstances as a whole as they appeared to the police at the time of the arrest, the requisite facts and information to give rise to probable cause to believe that appellant and his companions were the bombers cannot be said to have been possessed by the police and the arrests were, therefore, illegal and cannot support the search and seizure connected therewith. The motion to suppress should have been sustained.

Although it would appear that the evidence resulting from the search was vital to the state's case, it cannot be determined by this court that the state could not produce other evidence which might warrant a new trial and conviction. Therefore, the judgment will be reversed and the cause remanded.

Reversed and remanded.

All concur.